UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMARA TRICIA ROBERSON,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC LUTHERAN UNIVERSITY,<br><br>Defendant. | CASE NO. 3:13-cv-05323-RJB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the court on Defendant's Motion for Summary Judgment. Dkt. 37. The court has considered the relevant documents and the remainder of the file herein.

### I. RELEVANT FACTS

On April 26, 2013, Plaintiff Tamara Tricia Roberson filed a civil case against Pacific Lutheran University (PLU), alleging that she was discriminated against on the basis of race. Dkt. 1-1. Roberson's case arises out of PLU's decision not to hire Roberson for an Associate Director position at PLU. *Id.* Roberson alleges that PLU posted the position on May 4, 2012; that Roberson applied for the position on May 19, 2012; that her race was disclosed on the application materials; that she was qualified for the position; that PLU sent her an e-mail on July

6, 2012, informing her that another applicant had been selected; that the position was reposted on July 11, 2012; that the person who was ultimately selected for the position had qualifications equivalent to those of Roberson; and that PLU knew of Roberson's race and used it to discriminate against her. Dkt. 1-1, at 3-4.

## II. PROCEDURAL HISTORY

On July 30, 2013, Roberson filed a motion for summary judgment (Dkt. 17) that was denied because Roberson had failed to show that PLU's reasons for not hiring her were discriminatory. Dkt. 36. at 9.

On October 10, 2013, PLU filed its own motion for summary judgment, arguing that Roberson failed to establish a *prima facie* case of racial discrimination; that Roberson was not the most qualified candidate for the position; that the Hiring Manager was unaware of Roberson's race; and that Roberson has failed to provide evidence showing that PLU's reasons for not hiring her were discriminatory. Dkt. 37. On October 15, 2013, the Court notified Roberson of the requirements to respond to PLU's motion for summary judgment. Dkt. 40. Roberson filed her opposition to PLU's summary judgment motion on October 21, 2013, refuting PLU's arguments and restating many claims that are found in her complaint. Dkt. 41. PLU filed their reply on November 1, 2013. Dkt. 43.

## III. STATEMENT OF THE ISSUES

The Court must determine (1) whether Roberson has set forth sufficient evidence to establish a *prima facie* case of racial discrimination, and (2) whether Roberson has set forth sufficient evidence to establish that PLU's reasons for not hiring her were discriminatory.

## IV. DISCUSSION

**A.    Standard of Review on Summary Judgment.**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

1  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

2  be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3        In *Celotex,* the Supreme Court which imposed a burden on a party moving for summary

4  judgment beyond simply making the motion.

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any" which it believes demonstrate the absence of a general issue of material fact.

8  *Celotex Corp. v. Catrett*, 477 U.S. 317 at 323.*See Nissan Fire and Marine Insurance

9  Company, Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1105 (9th Cir. 2000)("A moving

10  party may not require the non-moving party to produce evidence supporting its claim or

11  defense simply by saying that the non-moving party has no such evidence.").

12      **B.**    **Plaintiff Must Satisfy *McDonnell* Factors to Survive Summary Judgment on

13          Title VII Claim.**

14        Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer– (1) to

15  fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

16  individual with respect to his compensation, terms, conditions, or privileges of employment,

17  because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-

18  2(a)(1).

19        The complainant in a Title VII trial must carry the initial burden under the statute of

20  establishing a *prima facie* case of racial discrimination. This may be done by showing (a) that

21  she belongs to a racial minority; (b) that she applied for and was qualified for a job for which the

22  employer was seeking applicants; (c) that, despite her qualifications, she was rejected; and (d)

23  that, after her rejection, the position remained open and the employer continued to seek

24

applicants from persons of complainant's qualifications. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If plaintiff meets the burden of establishing a *prima facie* case, the employer must produce a legitimate, nondiscriminatory explanation for the adverse employment action. *Id*. The ultimate burden then shifts back to the plaintiff to prove that the defendant's stated reasons are in fact pretext. *Id*. at 804.

### C.  Plaintiff Established a Prima Facie of Racial Discrimination.

Roberson has made a showing sufficient to establish a *prima facie* case. First, Roberson identified herself as "Black or African American" on her application. Dkt. 42, at 10. Because *McDonnell* only requires that plaintiff "belong to a racial minority," this first element is satisfied. PLU argues that Roberson fails to state a *prima facie* case because she has established no admissible evidence that the Hiring Manager knew that she was African American. Dkt. 37, at 13. Under *McDonnell,* whether the Hiring Manager knew of Roberson's race is not an element of a *prima facie case,* and PLU provides no authority suggesting otherwise. Accordingly, this argument does not defeat Roberson's *prima facie* case.

Second, Roberson applied for the Associate Director position and, as the PLU Human Resources office found, Roberson met all three of the required qualifications. Dkt. 30, at 2. PLU argues that Roberson has not satisfied this second element because "Roberson's own testimony establishes that she had none of the preferred qualifications." Dkt. 37, at 13. The fact that Roberson possessed all of the required qualifications is sufficient to satisfy this second element of a *prima facie case*. After all, the Human Resources department found her qualified enough to forward her application to the Hiring Manager. Dkt. 30, at 2. Furthermore, contrary to PLU's assertions, Roberson did not testify in her deposition that she had "none" of the preferred qualifications. Roberson only testified that she did not have three of the five preferred

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 5

qualifications. Dkt. 37, at 4; Dkt. 38, at 13. Roberson's opposition and declaration argue that she did in fact possess two of the preferred qualifications, "familiarity with current technology for use in cancer development" and "supervisory experience." Dkt. 41, at 2; Dkt. 42, at 2, 17-19.

Third, Roberson was not selected for the position. Dkt. 42, at 21. PLU does not dispute this element.

Fourth, the Associate Director position remained open after Roberson was rejected and PLU sought applicants with the same qualifications. Roberson established that the position was reposted after she was denied on July 6, 2012, and the reposted job listing provided the exact same required and preferred qualifications. Dkt. 42, at 21-24. Roberson has met the fourth element of a *prima facie* case.

Because Roberson has made a showing sufficient to establish a *prima facie* case, the burden shifts to PLU to set forth legitimate and nondiscriminatory reasons for not selecting Roberson.

### D.     PLU Produced a Legitimate, Nondiscriminatory Explanation.

PLU has at least three legitimate, nondiscriminatory reasons for not hiring Roberson. First, in a prior telephonic interview of Roberson for a lower position in PLU's Career Services Office, Hughes determined that Roberson did not possess the communication skills PLU was seeking for the lower level position. Dkt. 29, at 2. Roberson's answers were lengthy, unfocused and did not respond to the specific questions asked. *Id.*

Second, having determined that Roberson was not the best qualified person for a lower-level position, Hughes did not feel that Roberson was qualified for the higher-level, associate director position in the same department. *Id.* Roberson argues that this is a violation of the Equal Employment Opportunity Act of 1995 because the act "prohibits discrimination based (in

relevant part) on position or past employment position." Dkt. 41, at 4. Roberson did not assert this specific violation in her complaint, and she also fails to provide sufficient specificity as to how PLU's actions in considering her prior job application violated the federal law.

Third, Roberson did not have a Master's Degree in Counseling, did not have experience in career counseling in a four-year college or university, and did not have specific experience administering the Strong Interests Inventory and MBTI tests, all of which are preferred qualifications for the position. *Id.* PLU eventually offered the position to two other applicants, both of whom possessed preferred qualifications that Roberson did not. *Id.* at 3-4. It is also worth mentioning that Hughes, the Hiring Manager who decided not to select Roberson, was unaware of Roberson's race and also testified that race played no factor in the employment decision. Dkt. 29, at 2-3.

In summary, the evidence reflects that Roberson was not hired because she performed unsatisfactorily in a phone interview and lacked qualifications that other applicants did not. These reasons are legitimate and nondiscriminatory, and as a result the burden shifts back to Roberson to establish pretext.

**E.  Plaintiff Failed to Show Pretext or an Issue of Fact Precluding Summary Judgment.**

Roberson has not produced evidence of pretext. *McDonnell* requires that the plaintiff be allowed the final opportunity "to demonstrate by competent evidence that the presumptively valid reasons for his[/her] rejection were in fact a coverup for a racially discriminatory decision." 411 U.S. at 805.

The lack of competent evidence is fatal to Roberson's case. Most significantly, Roberson has not identified any evidence that shows Hughes, the Hiring Manager, knew about Roberson's

race. PLU, on the other hand, has provided plenty of evidence showing the opposite, including testimony from Hughes herself. Dkt. 29, at 2-4; Dkt. 30, at 2. Roberson cannot prove that Hughes' decision was racially discriminating without proving that Hughes was aware of Roberson's race.

Roberson argues that she and "most other reasonable minds" would believe that PLU used the voluntary demographic data in her application throughout the entire hiring process; that PLU's email on July 6, 2012, contradicts PLU's statements that Roberson performed poorly in the telephone interview; and that PLU's actions in reposting the job after she had submitted her application means they did not have more qualified applicants. Dkt. 41, at 3-5; Dkt. 42, at 2-5.

But Roberson fails to provide any evidence that PLU actually did use her demographic data in making the employment decision. Roberson ignores the language at the beginning of the Voluntary Demographic Data section in the application, which provided that voluntary demographic data "will not be used in any employment decisions and its contents are confidential to Human Resources." Dkt. 42, at 10. PLU provided testimony that this protocol was followed by the letter: a Human Resources official testified that Roberson's demographic data was not passed on to Hughes, and Hughes testified that race played no factor in her decision not to select Roberson. Dkt. 29, at 2-4; Dkt. 30, at 1-2. Hughes was not even aware of Roberson's race. Dkt. 29, at 2. Roberson herself testified that she has no personal knowledge of what the human resources department did with her demographic data. Dkt. 38, at 12.

Moreover, the email that Roberson refers to, which merely informed Roberson that "it was a difficult decision" in denying her the lower-level job, is inconsequential and far from raising an issue of fact sufficient to preclude summary judgment. Dkt. 42, at 31. PLU's statement merely assured Roberson that they gave her application "careful consideration." *Id.*

Finally, the fact that PLU reposted the job in no way suggests that Roberson was the most qualified applicant remaining. More importantly, PLU's reposting of the job does not raise any issue of fact relating to pretext that would be sufficient to preclude summary judgment.

**F.     Conclusion.**

Roberson is unable to satisfy the burden shifting test set forth by *McDonnell*. PLU provided legitimate, nondiscriminatory reasons for not selecting Roberson. In response, Roberson has not provided any factual evidence suggesting these reasons were in fact mere pretext. This failure by Roberson is fatal to her case and warrants summary judgment in PLU's favor.

V.     ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 37) is **GRANTED.** This case is **DISMISSED WITH PREJUDICE.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 8th day of November, 2013.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge